IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Ahmad Yilmaz,<br><br>Plaintiff,<br><br>v.<br><br>Louie Restaurants, LLC & Sun Holdings, Inc.,<br><br>Defendant. | Case No. 26 cv 8854<br><br>**Jury Demand** |

## Complaint

Plaintiff Ahmad Yilmaz, by and through his attorneys, Bathke IP, P.C., complains of Defendants Louie Restaurants, LLC and Sun Holdings, Inc., and alleges as follows:

## Nature of Action

1. This is an action for copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, and for violations of the Illinois Freelance Worker Protection Act, 820 ILCS 193/1 *et seq.*

2. Plaintiff Ahmad Yilmaz is a freelance creative professional and graphic designer based in Illinois.

3. Beginning in or around September 2025, Plaintiff created original graphic, digital, print, marketing, promotional, and related creative works for the Bar Louie restaurant system.

1

4. On September 29, 2025, ownership and control of the Bar Louie restaurant system transferred to Louie Restaurants, LLC, an affiliate of Sun Holdings, Inc.

5. From September 29, 2025, through at least November 2025, Defendants requested, accepted, approved, used, reproduced, distributed, and publicly displayed Plaintiff's creative works in connection with Bar Louie marketing and promotional campaigns.

6. Defendants did so without paying Plaintiff for his freelance services and without obtaining a written copyright license or assignment from Plaintiff.

7. Plaintiff seeks statutory damages under 17 U.S.C. § 504(c), or, in the alternative, actual damages and Defendants' profits under 17 U.S.C. § 504(b), together with injunctive relief, impoundment and destruction or other appropriate disposition of infringing materials, attorneys' fees, costs, interest, and all other relief available under the Copyright Act.

8. Plaintiff also seeks all available statutory damages available under the Illinois Freelance Worker Protection Act, 820 ILCS 193/1 *et seq.*

### Jurisdiction and Venue

9. This Court has subject-matter jurisdiction over Plaintiff's copyright claims under 28 U.S.C. §§ 1331 and 1338(a) because those claims arise under the Copyright Act, 17 U.S.C. § 101 *et seq.*

10. This Court has supplemental jurisdiction over Plaintiff's Illinois Freelance Worker Protection Act ("IFWPA") claim under 28 U.S.C. § 1367

because that claim forms part of the same case or controversy as Plaintiff's federal copyright claims.

11.     The IFWPA claim arises from the same freelance engagement, the same creative works, the same course of conduct, and the same refusal to pay Plaintiff while using his works.

12.     This Court has personal jurisdiction over Defendants because Defendants transacted business in Illinois, contracted for and accepted freelance services from an Illinois-based freelance worker, directed communications and work requests to Plaintiff in Illinois, used Plaintiff's works in commerce, and caused injury to Plaintiff in Illinois.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because Plaintiff resides in this District, Defendants are subject to personal jurisdiction in this District, a substantial part of the events and omissions giving rise to the claims occurred in this District, and Defendants may be found in this District for purposes of the Copyright Act.

**Parties**

14.     Plaintiff Ahmad Yilmaz is an individual residing in Arlington Heights, Illinois. He is a freelance creative professional and graphic designer.

15.     Defendant Louie Restaurants, LLC is, on information and belief, a limited liability company based in Farmers Branch, Texas that owns, controls, operates, or manages the Bar Louie restaurant system and does business as Bar Louie.

3

16. Defendant Sun Holdings, Inc. is, on information and belief, a company based in Farmers Branch, Texas, is affiliated with Louie Restaurants, LLC and is located at the same address as Louie Restaurants, LLC.

17. On information and belief, Louie Restaurants, LLC and Sun Holdings, Inc. acted jointly and in concert with respect to the conduct alleged in this Complaint, including requesting Plaintiff's services, accepting Plaintiff's creative works, approving those works, using those works in Bar Louie marketing, and refusing to pay Plaintiff.

18. At all relevant times, each Defendant acted through its agents, employees, representatives, affiliates, divisions, predecessors, successors, assigns, or persons acting in active concert or participation with it.

### Factual Allegations

19. On or about September 2, 2025, Mr. Yilmaz was engaged to provide graphic design services for the Bar Louie restaurant system.

20. On information and belief, the owner of the Bar Louie restaurant system on September 2, 2025, was BLH TopCo LLC and its affiliated entities ("BLH").

21. BLH, through its Director of Marketing, agreed to pay Mr. Yilmaz $6,000 a month for his graphic design services and the term of the agreement was month to month.

22. The scope of work included promotional campaign design, digital and print assets, menu design, supporting creative assets, web and social graphics, in-store promotional collateral, revisions, and final production-ready files.

23. Mr. Yilmaz performed freelance creative services for BLH from September 2, 2025, to September 28, 2025.

24. On September 29, 2025, ownership and control of the Bar Louie restaurant system transferred from BLH to Louie Restaurants, LLC, an affiliate of Sun Holdings, Inc.

25. From September 29, 2025, to on or about November 7, 2025, Mr. Yilmaz provided Defendants the same freelance graphic design services he provided BLH.

26. During this time, Defendants requested, accepted, reviewed, approved, and used Mr. Yilmaz's creative works for the Bar Louie restaurant system.

27. Defendants did not provide Mr. Yilmaz with a written engagement agreement for his freelance services.

28. On or about October 15, 2025, Mr. Yilmaz provided Defendants with a written engagement agreement, see attached Exhibit 1.

29. Mr. Yilmaz also inquired about payment for his services and provided Defendants with his unpaid invoices for work done for the Bar Louie restaurant system.

30. On or about October 17, 2025, in response to Mr. Yilmaz's email concerning the engagement agreement and payment, a Sun Holdings representative responded that he would "get on all that".

31. On or about October 29, 2025, Mr. Yilmaz again followed up concerning execution of the agreement and settlement of his unpaid invoices.

32. On or about November 4, 2025, Mr. Yilmaz asked whether there was anyone else on Defendants' team to whom he could send the agreement for signature.

33. On or about November 5, 2025, a Sun Holdings representative responded that he had followed up with the CFO.

34. Despite those communications, Defendants did not sign Mr. Yilmaz's agreement, did not provide their own written agreement, and did not pay Mr. Yilmaz for services Mr. Yilmaz rendered Defendants on and after September 29, 2025.

35. On information and belief, Sun Holdings was not merely a passive corporate affiliate regarding the Bar Louie restaurant system, Mr. Yilmaz's graphic design services, and the creative assets he provided.

36. Sun Holdings personnel was directly involved in communications concerning Mr. Yilmaz's agreement, invoices, creative assets, approval process, and continued work for the Bar Louie restaurant system.

37. On information and belief, Sun Holdings had the right and ability to supervise, control, approve, direct, or stop Louie Restaurants, LLC's use of marketing assets, including Mr. Yilmaz's creative works.

38. On information and belief, Sun Holdings received a direct or indirect financial benefit from Louie Restaurants, LLC's use of Mr. Yilmaz's creative works because those works promoted Bar Louie restaurants, products, events, customer traffic, goodwill, brand value, and sales.

39. After receiving notice of Mr. Yilmaz's nonpayment and copyright claims, Sun Holdings had the ability to stop or direct Louie Restaurants, LLC to stop continued use of Mr. Yilmaz's creative works but failed to do so.

Mr. Yilmaz's Creative Works for Bar Louie from September 29, 2025

40. From September 29, 2025, to on or about November 14, 2025, Mr. Yilmaz created and delivered numerous original creative works to Defendants for Defendants' benefit, including digital and print marketing assets for Bar Louie campaigns.

41. Mr. Yilmaz is the author and copyright owner of these original creative works.

42. Those works included, among others, assets for the November "Margarita of the Month" campaign, Holiday Gift Card materials, Holiday Catering materials, Wichita new store opening and grand opening materials, Wichita signage, Halloween Buckets designs, and related marketing collateral.

43. Defendants' personnel reviewed and approved Mr. Yilmaz's works.

44. For example, on or about October 24, 2025, Mr. Yilmaz sent Louie Restaurants, LLC, and Sun Holdings personnel November Margarita of the Month digital assets and related print files.

45. A Sun Holdings representative responded that the assets looked good to him if they looked good to Louie Restaurants, LLC.

46. A Louie Restaurants, LLC, marketing representative then responded that the assets looked good and thanked Mr. Yilmaz.

7

47. Defendants used, reproduced, distributed, displayed, or otherwise exploited Mr. Yilmaz's creative works in Bar Louie marketing and promotional channels.

48. Defendants did not pay Mr. Yilmaz for his creative works.

49. Defendants did not obtain a written copyright assignment from Mr. Yilmaz.

50. Defendants did not obtain a written copyright license authorizing unpaid use of Mr. Yilmaz's works.

51. Defendants continue to possess, use, reproduce, distribute, display, or benefit from Mr. Yilmaz's creative works notwithstanding nonpayment and the absence of any written license or assignment.

<div align="center">Copyright Registrations</div>

52. Mr. Yilmaz has obtained the following copyright registrations for the multiple works at issue in this action:

| Work (Title) | Reg. No. | Eff. Date | First Publ. |
|---|---|---|---|
| Wichita Grand Opening Material (Email V1), *see* attached Exhibit 2 | VA 2-509-266 | Feb. 11, 2026 | Nov. 15, 2025 |
| Catering Sticker, *see* attached Exhibit 3 | VA 2-500-628 | Feb. 11, 2026 | Nov. 15, 2025 |
| Wichita Grand Opening Material (Email V2), *see* attached Exhibit 4 | VA 2-509-281 | Feb. 11, 2026 | Nov. 15, 2025 |
| Halloween Buckets (Digital), *see* attached Exhibit 5 | VA 2-492-122 | Jan. 7, 2026 | Oct. 30, 2025 |

| 2025 Holiday Gift Card), *see* attached Exhibit 6 | VA 2-494-158 | Jan. 30, 2026 | Nov. 4, 2025 |
|---|---|---|---|
| November MOTM (Digital), *see* attached Exhibit 7 | VA 2-494-843 | Jan. 30, 2026 | Nov. 1, 2025 |
| November MOTM (Print) *see* attached Exhibit 8 | *Id.* | *Id.* | *Id.* |
| Wichita Elevator Signage), *see* attached Exhibit 9 | VA 2-494-689 | Jan. 30, 2026 | Nov. 1, 2025 |

<u>Mr. Yilmaz's Efforts to Resolve Dispute Outside of Court</u>

53. Mr. Yilmaz and his counsel have made repeated good-faith efforts to resolve this dispute outside of court, including by providing Defendants and their counsel with supporting documents, correspondence, invoices, and evidence of Defendants' use of Mr. Yilmaz's works.

54. On November 14, 2025, Sun Holdings sent Mr. Yilmaz an email regarding his continued work for the Bar Louie restaurant system. In response to that email, Mr. Yilmaz again informed Sun Holdings that he had effectively never been paid for his services.

55. Mr. Yilmaz received no further communications from Sun Holdings.

56. Mr. Yilmaz then contacted an attorney who Mr. Yilmaz understood was one of Defendants' attorneys, and that attorney told Mr. Yilmaz to contact another attorney Taylor Bennett about his unpaid invoices.

57. Mr. Yilmaz contacted Mr. Bennett on or about November 24, 2025, and received a text message from Mr. Bennett directing Mr. Yilmaz to email Mr. Yilmaz's last invoice to Mr. Bennett, which Mr. Yilmaz did.

58. Mr. Yilmaz did not receive any further response from Mr. Bennett.

59. Mr. Yilmaz then engaged the undersigned to assist with the resolution of this dispute.

60. On or about January 14, 2026, Mr. Yilmaz, through counsel, sent Defendants a detailed demand for payment and cease-and-desist letter asserting his claims under the IWFPA and the Copyright Act.

61. In response to Mr. Yilmaz's letter, Defendants' counsel disputed or questioned Defendants' responsibility for Mr. Yilmaz's claims and requested additional substantiation.

62. Mr. Yilmaz's counsel provided additional correspondence and documents supporting his claims, including the proposed retainer agreement, emails concerning the proposed retainer agreement, past-due invoices, Defendants' review and approval of Mr. Yilmaz's creative assets, and communications showing that Defendants' personnel were directly involved in requesting, receiving, reviewing, and approving Mr. Yilmaz's work.

63. On March 30, 2026, Mr. Yilmaz's counsel followed up with Defendants' counsel and asked whether Defendants would provide any further response to Mr. Yilmaz's claims and the supporting materials that had been provided.

64. On April 27, 2026, Mr. Yilmaz's counsel again followed up with Defendants' counsel.

65. In its email response, Defendants neither addressed any of the points made in Mr. Yilmaz's detailed letter nor provided a written denial supported by a signed agreement, copyright assignment, license, or proof that Mr. Yilmaz has been paid for the post-September 29, 2025, services and works.

66. Rather, Defendants implicitly questioned whether Defendants had used Mr. Yilmaz's works. But when asked whether Defendants denied using Mr. Yilmaz's works, Defendants, through counsel, stated that they were not contending anything.

67. Thereafter, Mr. Yilmaz was contacted by new counsel for Defendants concerning the dispute, settlement efforts, and his claims for unpaid freelance compensation and unauthorized use of copyrighted works.

68. On or about June 4, 2026, Mr. Yilmaz's counsel sent additional settlement correspondence to Defendants' new counsel, including the prior demand letters, the email correspondence concerning the proposed freelance services agreement and past-due invoices, and correspondence evidencing Defendants' direct involvement with Mr. Yilmaz and the assets he created.

69. Mr. Yilmaz also provided Defendants, through counsel, with specific evidence of Defendants' continued use of his creative assets, including evidence concerning the November "Margarita of the Month" digital asset and other Bar Louie promotional materials created by Mr. Yilmaz.

11

70. Despite Mr. Yilmaz's repeated efforts to resolve this dispute without litigation, Defendants have refused to fully compensate Mr. Yilmaz for his freelance work and copyright-protected works.

71. To date, Defendants have not tendered any payment to Mr. Yilmaz.

72. Defendants' conduct was knowing, intentional, willful, and in disregard of Mr. Yilmaz's rights.

**Count I:**
**Copyright Infringement**
**against all Defendants**
**(17 U.S.C. §501)**

73. Plaintiff incorporates by reference all the paragraphs previously alleged as though fully set forth herein.

74. Plaintiff is the author and copyright claimant for the registered works identified in this Complaint.

75. Plaintiff's works contain copyrightable original expression, including original two-dimensional artwork, arrangements of visual elements, compilation of elements, and related original graphic design expression.

76. Plaintiff has satisfied the registration prerequisite for filing suit under 17 U.S.C. § 411(a) for the registered works identified in this Complaint.

77. Defendants had access to Plaintiff's works because Plaintiff created and delivered the works directly to Defendants and their personnel.

78. Defendants copied, reproduced, distributed, displayed, transmitted, published, used, or prepared derivative works from Plaintiff's copyrighted works without authorization.

79.     Defendants used Plaintiff's works in connection with Bar Louie marketing and promotional campaigns, including digital, social, email, web, print, in-store, and point-of-purchase materials.

80.     Defendants' acts violated Plaintiff's exclusive rights under 17 U.S.C. § 106.

81.     Defendants' infringement was not authorized by Plaintiff, was not licensed in writing, and was not excused by payment.

82.     To the extent Defendants contend that Plaintiff granted any implied or limited permission to use final deliverables, such permission was conditioned on full payment and did not authorize unpaid, continued, or unrestricted use.

83.     Defendants' infringement has caused and continues to cause Plaintiff harm.

84.     Defendants have profited from their infringement, including by using Plaintiff's works to market and promote Bar Louie restaurants, products, events, and campaigns.

85.     Defendants' infringement was willful because Defendants knew Plaintiff created the works, knew Plaintiff sought payment and a signed agreement, knew no written license or assignment had been executed, and nevertheless continued to use or benefit from Plaintiff's works.

86.     Plaintiff is entitled to recover statutory damages under 17 U.S.C. § 504(c), or, in the alternative, actual damages and Defendants' profits under 17 U.S.C. § 504(b).

87. Plaintiff is entitled to injunctive relief under 17 U.S.C. § 502 prohibiting further infringement.

88. Plaintiff is entitled to impoundment, destruction, return, or other appropriate disposition of infringing copies and materials under 17 U.S.C. § 503.

89. Plaintiff is entitled to recover his costs and attorneys' fees under 17 U.S.C. § 505 to the extent permitted by law.

<div align="center">

**Count II:**
**Vicarious Copyright Infringement**
**against Defendant Sun Holdings, Inc.**

</div>

90. Plaintiff incorporates by reference all the paragraphs previously alleged as though fully set forth herein.

91. Louie Restaurants, LLC directly infringed Plaintiff's copyrights by copying, reproducing, distributing, displaying, transmitting, publishing, using, or preparing derivative works from Plaintiff's copyrighted works without authorization, payment, written license, or written assignment.

92. Sun Holdings had the right and ability to supervise, control, approve, direct, or stop Louie Restaurants, LLC's use of Plaintiff's creative works in Bar Louie marketing and promotional campaigns.

93. Sun Holdings personnel participated in communications concerning Plaintiff's agreement, invoices, and creative assets.

94. Sun Holdings personnel reviewed, approved, facilitated approval of, or otherwise participated in the decision to use Plaintiff's creative works in Bar Louie marketing and promotional campaigns.

95. Sun Holdings had the practical ability to prevent or limit the infringing conduct by directing Louie Restaurants, LLC to stop using Plaintiff's works unless and until Plaintiff was paid and a written license or assignment was executed.

96. Sun Holdings had a direct financial interest in the infringing use of Plaintiff's works because those works promoted Bar Louie restaurants, products, events, customer traffic, goodwill, brand value, and sales, and thereby benefited Sun Holdings and its affiliate Louie Restaurants, LLC.

97. Sun Holdings failed to exercise its right and ability to supervise, control, or stop the infringing use of Plaintiff's works.

98. Sun Holdings is therefore vicariously liable for the infringement of Plaintiff's copyrights committed by Louie Restaurants, LLC under the Copyright Act.

### Count III:
### Contributory Copyright Infringement
### against Defendant Sun Holdings, Inc.

99. Plaintiff incorporates by reference all the paragraphs previously alleged as though fully set forth herein.

100. Louie Restaurants, LLC directly infringed Plaintiff's copyrights by copying, reproducing, distributing, displaying, transmitting, publishing, using,

15

or preparing derivative works from Plaintiff's copyrighted works without authorization, payment, written license, or written assignment.

101. Sun Holdings had specific knowledge of Plaintiff's works, Plaintiff's payment demands, Plaintiff's request for execution of the written agreement, and the absence of any written copyright license or assignment.

102. Sun Holdings' knowledge was not merely generalized knowledge that its corporate affiliate might be using Mr. Yilmaz's corporate works. Rather, Sun Holdings' knowledge concerned the specific works, campaigns, invoices, and marketing uses by Louie Restaurants, LLC at issue in this action.

103. Sun Holdings intentionally and materially contributed to the infringement by affirmatively participating in communications concerning Plaintiff's agreement, invoices, and creative assets; reviewing, approving, directing, encouraging, or facilitating approval of Plaintiff's works; and enabling the deployment or continued use of those works in Bar Louie marketing and promotional campaigns.

104. Sun Holdings further contributed to the infringement by continuing to approve, facilitate, enable, or allow the use of Plaintiff's works after receiving notice that Plaintiff had not been paid and that no written license or assignment authorized Louie Restaurants, LLC's continued use of those works.

105. Sun Holdings' conduct was directed to the specific infringing use of Plaintiff's works and helped make that infringement succeed by enabling Louie Restaurants, LLC to use Plaintiff's creative assets in Bar Louie marketing and

promotional channels without payment, written license, or written assignment.

106. Sun Holdings' conduct was knowing, intentional, willful, and in disregard of Plaintiff's rights.

107. Sun Holdings is therefore contributorily liable for the infringement of Plaintiff's copyrights committed by Louie Restaurants, LLC under the Copyright Act.

## Count IV
### Violations of the
### Illinois Freelance Worker Protection Act
### Against all Defendants
### 820 ILCS 193/1 *et seq.*

108. Plaintiff incorporates by reference all the paragraphs previously alleged as though fully set forth herein.

109. Plaintiff is a freelance worker within the meaning of the Illinois Freelance Worker Protection Act ("IFWPA") because he was retained as an independent contractor to provide creative and graphic design services for compensation.

110. Defendants are contracting entities within the meaning of the IFWPA because they retained, accepted, or benefited from Plaintiff's freelance services.

111. Plaintiff provided services in Illinois, from Illinois, and for the benefit of Defendants.

112. The value of Plaintiff's freelance services equaled or exceeded the monetary threshold required by the IFWPA.

113. Plaintiff requested that Defendants execute a written agreement by providing Defendants with a written freelance creative services agreement.

114. Defendants failed to provide Plaintiff with a written contract containing the terms required by 820 ILCS 193/10.

115. Plaintiff performed freelance services for Defendants' benefit on and after September 29, 2025.

116. Defendants accepted Plaintiff's services and creative deliverables.

117. Defendants failed to pay Plaintiff by the date required by the parties' agreement or, alternatively, no later than 30 days after completion of Plaintiff's services, in violation of 820 ILCS 193/15.

118. Defendants' failure to pay Plaintiff was willful, knowing, and without lawful justification.

119. Defendants' failure to provide a written contract and failure to pay Plaintiff caused Plaintiff damages.

120. Under 820 ILCS 193/30, Plaintiff is entitled to recover the unpaid compensation owed, statutory damages, including double damages for nonpayment and damages for failure to provide a written contract, reasonable attorneys' fees, costs, and all other relief available under the statute.

121. Plaintiff seeks recovery for claims arising from September 29, 2025, to the present, including all unpaid compensation, statutory damages, and related relief attributable to Defendants' conduct.

## Request for Relief

Plaintiff Ahmad Yilmaz respectfully requests that the Court enter judgment in his favor and against Defendants Louie Restaurants, LLC and Sun Holdings, Inc., jointly and severally where permitted by law, and order the following:

A. Enter a judgment that Defendants infringed Plaintiff's copyrights in violation of 17 U.S.C. §§ 106 and 501;

B. Enter a judgment that Sun Holdings, Inc. is vicariously liable for copyright infringement by Louie Restaurants, LLC;

C. Enter a judgment that Sun Holdings, Inc. is contributorily liable for copyright infringement by Louie Restaurants, LLC;

D. Enter a judgment that Defendants violated the Illinois Freelance Worker Protection Act, 820 ILCS 193/1 et seq.;

E. Award Plaintiff statutory damages under 17 U.S.C. § 504(c) or, in the alternative, actual damages and Defendants' profits under 17 U.S.C. § 504(b);

F. Enjoin Defendants and all persons acting in concert with them from copying, reproducing, distributing, publicly displaying, publishing, transmitting, using, or preparing derivative works from Plaintiff's copyrighted works without authorization under 17 U.S.C. § 502;

G.     Direct Defendants to remove Plaintiff's works from all unauthorized digital, social media, email, web, paid advertising, in-store, point-of-purchase, print, and other channels;

H.     Require impoundment, destruction, return, or other appropriate disposition of infringing copies and materials in Defendants' possession, custody, or control under 17 U.S.C. § 503;

I.     Award Plaintiff unpaid compensation, statutory damages, including double damages for nonpayment and damages for failure to provide a written contract, and all other relief available under 820 ILCS 193/30;

J.     Award Plaintiff prejudgment and post-judgment interest to the fullest extent permitted by law;

K.     Award Plaintiff's reasonable attorneys' fees and costs under the Copyright Act, and the Illinois Freelance Worker Protection Act, and

L.     Award Plaintiff any such other and further relief as the Court deems just and proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 24, 2026

<div style="margin-left:50%">

Respectfully submitted,

Ahmad Yilmaz, by:

/s/ John T.D. Bathke

John T.D. Bathke (IL 6305438)
Bathke IP, P.C.
33 N. Dearborn St., Ste. 900
Chicago, Illinois 60602
Telephone: (312) 221-3000
Email: john@bathkeip.com
*Counsel for Plaintiff Ahmad Yilmaz*

</div>

21